Iles v. Swank.

---

## Wesley Iles v. Emma L. Swank.

105      9
a202s  453

1. SLANDER—*What is, Under the Statute.*—The statute makes it an actionable slander for a person to falsely use, utter or publish words which in their common acceptance shall amount to charge any person with having been guilty of fornication or adultery.

2. SAME—*When Several Statements Taken Together Amount to Charging Plaintiff with Adultery.*—While it is true that it is not slander to say falsely of a person that he or she *would commit an offense,* which would constitute slander if it had been said that such person had committed that offense, yet where several such statements, in view of the whole connection, surroundings, occasion and evident intent with which they were spoken and understood by the persons to whom they were said, amount to charging the plaintiff with having been guilty of adultery, such statements constitute slander.

Trespass on the Case, for slander. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge presiding.

Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

G. W. SALMANS and FRED DRAPER, attorneys for appellant.

PENWELL & LINDLEY, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action on the case brought in the Circuit Court of Vermilion County June 6, 1901, by the appellee, Emma L. Swank, against the appellant, Wesley Iles, to recover damages for slander alleged to have been spoken of her by him. The case was tried by jury and resulted in a verdict in favor of appellee for $1,500. The appellant moved for a new trial, which being denied, he excepted, and the court gave judgment on the verdict.

To effect a reversal of the judgment the appellant prosecutes this appeal and argues for error that the verdict and judgment are against the law and evidence, and that the court gave an improper instruction for the appellee and refused proper instructions for the appellant.

The declaration, after alleging that the appellee was a chaste and virtuous married woman, living upon a farm with her husband and enjoying a good name and reputation, charged that the appellant, maliciously intending to injure her in her good name and reputation, and bring her in public scandal and disgrace, and to cause her to be suspected and believed by others to be a lewd and unchaste woman and guilty of adultery, in a certain conversation which he had on, to wit, June 7, 1900, with one W. R. Wright (who was then boarding at the house of her husband and working for him on the farm), falsely charged the appellee with having been guilty of adultery by asking said Wright " If he was getting much " (meaning to inquire if the said Wright was having sexual intercourse with any one). And that said Wright replied, " he was not." That the appellant then said to Wright, " It seems as though you are. How about that woman up there"? (Meaning the appellee). Wright asked the appellant what woman he

Iles v. Swank.

meant; the appellant replied, " Mrs. Swank, up there where you stay." Wright replied that " she was a nice woman as far as he knew and never thought of anything of that kind " (meaning sexual intercourse with said Wright). The appellant replied to said Wright, " You ought to get it " (meaning sexual intercourse with the appellee); " that he (meaning appellant) could get it " (meaning that the appellant could have sexual intercourse with the appellee); " that he knew her to be that kind of a woman " (meaning that the appellee was a lewd and unchaste woman and had been guilty of adultery).

And in another count the appellant was charged with falsely saying at another time on, to wit, June 7, 1900, that " She (meaning the appellee) keeps a public house; I could do business with her if I wanted to. I have seen lots of that going on there." (Meaning thereby to charge the appellee with having been guilty of adultery.)

And in a further count, the appellant was charged with having falsely said, on, to wit, June 7, 1900, to another farm hand who lived on the farm with the appellee and her husband, " How about that woman up there ? " (Meaning the appellee.) " Mrs. Swank, up there where you stay. You ought to get it." (Meaning sexual intercourse with the appellee.) " I can get it (meaning that the appellant could have sexual intercourse with the appellee if he desired.) " She is that kind of a woman." (Meaning thereby that the appellee was a lewd and unchaste woman and was guilty of adultery.)

The appellant demurred to the declaration, but it was overruled and he pleaded, first, the general issue, and second, the statute of limitations, and issue was joined on the first, and the second was traversed.

The evidence shows that the appellee is a married woman living on a farm with her husband, who employed and boarded J. D. Wilfrong and W. R. Wright. J. D. Wilfrong testified that while he was living with them (about June, 1900,) the appellant inquired of him how he liked working for the appellee and her husband. That he answered

"All right." That the appellant then said, " I know why; they run nothing but a public house and I could do business with the woman if I wanted to." That the witness understood that the appellant meant by what he said, that appellee and her husband ran a bad house; that the appellant could have sexual intercourse with her if he desired, and that she had and would commit adultery.

W. R. Wright testified that while he was living with the appellee and her husband in June, 1900, he had occasion to go past where the appellant lives, and as he passed, the appellant talked with him about the appellee, and asked him if he was getting much these days, and he said "No, I don't know as I am;" and he said " Seems as if you are;" and I said "From whom?" and he said "From that woman up there;" and I asked "What woman?" and he said "Swank's wife;" and I said " No, I didn't think she was that kind of a woman;" and he said " If you ain't you ought to, you can get it, and you are a fool if you don't; I could do business with her." The witness further testified that " from the way the appellant spoke it, and in the tone he spoke it, he was trying to make Mrs. Swank a bad character; that she was nothing but a whore."

There were some persons who testified that the general reputation of the witnesses J. D. Wilfrong and W. R. Wright in the neighborhood where they lived, for truth, was not very good, while others testified that such reputation was good.

The appellant owns seventy acres of land worth $90 per acre, is a bachelor, and owns personal property worth several hundred dollars. The appellee and her husband own a house and lot in Sidell worth about $400, and he is a tenant farmer.

The appellant testified in his own behalf and denied that he had said either what J. D. Wilfrong testified he said about the appellee, or what W. R. Wright testified that he said concerning her.

The court gave but a single instruction for the appellee, while six were given at the instance of the appellant, and

Iles v. Swank.

when they are all read as one charge, they fairly and fully embody the law applicable to the averments of the declaration and the evidence on the trial.

Counsel for appellant criticises the instruction given for the appellee for assuming that some of the counts in the declaration charge actionable slander, and it is contended that none of them do, or if any do, that the instruction fails to state which do and which do not.

There was a demurrer filed to the declaration and overruled, and had counsel for the appellant desired to have taken the judgment of this court on the sufficiency of the declaration, they should have stood by their demurrer and not have pleaded to the declaration and submitted instructions which imply that it stated a good cause of action as respects the counts upon which the case was tried.

We have examined the instruction criticised, however, and while it is loosely and inartfully drawn, yet in substance it embodies a correct proposition of law applicable to the issues tried and the evidence produced, and therefore it was properly given.

The principal contention of the appellant, however, is that the words alleged to have been spoken by him, and which the two witnesses testified he used, do not charge that the appellee had committed adultery, but would do so if properly approached, and that does not constitute slander.

While it is true that it is not slander to say falsely of a person that he or she *would commit an offense,* which would constitute slander if it had been said that such person had committed that offense (Koch v. Heideman, 16 Ill. App. 478), yet we are not prepared to hold that each of the three sets of words alleged in the three counts of the declaration above quoted respectively to have been falsely spoken by the appellant of and concerning the appellee, a married woman, do not, in their common acceptance, amount to charging her with having been guilty of adultery, for we think they do; especially in view of the whole connection, surroundings, occasion and evident intent with which they were spoken and understood by the persons to whom they

were said; the statute makes it an actionable slander for
a person to falsely use, utter or publish words which in
their common acceptance shall amount to charge any per-
son with having been guilty of fornication or adultery.
(1 S. & C. Ill. Stat., Chap. 126, Sec. 1.)

In the conflict of the evidence, it was the peculiar prov-
ince of the jury to determine where the truth was, and the
bill of exceptions does not contain anything that warrants
us in disturbing their conclusion, and therefore we will
affirm the judgment.